IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BLAKE L. LEISTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:14-cv-00263-NKL |
| ) | |
| CAROLYN W. COLVIN ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Blake Leister seeks review of the Administrative Law Judge's decision denying his application for Social Security benefits. For the following reasons, the decision of the Administrative Law Judge (ALJ) is reversed, and the case is remanded for further consideration by the ALJ.

**I. Background**

**A. Leister's Background**

Leister was born on July 7, 1984, and has struggled with mental illness since he was in middle school. Leister's school records from sixth grade indicate that he was poor at following instructions, paying attention to lectures, staying on task, and interacting appropriately with peers and adults. [Tr. 443]. At one point his teacher noted that he had to be redirected ten times in eighteen minutes. [Tr. 442]. In 1998 Leister spent time in juvenile detention. [Tr. 450]. He was then forced to repeat seventh grade due to truancy

and his academic record. [Tr. 451]. Leister was expelled from three schools in elementary and middle school. [Tr. 416].

His ninth grade year, Leister was enrolled in public school for a number of very short periods of time, followed by significant periods of time in facilities for mental health and behavioral treatment. Leister was enrolled at Drexel High School for ten days in 1997, during which time he had four conduct incidents. [Tr. 414]. He subsequently withdrew and re-enrolled in an alternative program at Drexel in January 1998. *Id.* While enrolled in the alternative program, he was unpredictable and often violent and hostile. [Tr. 416-22]. Leister left the alternative program after a few months to enroll at Ozanam School for behavioral correction. During Leister's time at Ozanam he earned improved grades but his problems with focus and truancy persisted. [Tr. 395-96]. Once removed from the structured environment of Ozanam and reenrolled at Drexel, Leister's grades relapsed to F's. [Tr. 382]. In 2000 he was briefly admitted to Royal Oaks Hospital Education Department, during which time his grades significantly improved. [Tr. 383].

In 1998, Leister was admitted to Crittendon behavioral health hospital for "'taking a bunch of pills' to get high." [Tr. 819]. He was diagnosed with major depression, conduct disorder, mixed substance abuse, and rule out learning disabilities. [Tr. 820]. He was prescribed Prozac and Depakote. [Tr. 821]. In 1999, Leister was admitted to Lakeland Regional Hospital for fifteen days due to significant depression. [Tr. 947]. Prior to his admission, he self-mutilated his arm with staples and stated that the "angels of death" were coming to get him. *Id.* He stated that he had problems with depression, mood swings, aggression, low energy, isolative behaviors, anhedonia, hopelessness, and

2

Case 4:14-cv-00263-NKL   Document 16   Filed 12/15/14   Page 2 of 12

insomnia. *Id.* He was diagnosed at discharge with severe depression, polysubstance abuse, conduct disorder, and GAF score of 30. [Tr. 949]. Leister was discharged to the Lakeland Regional Hospital Residential Program.

Since he was thirteen, Leister has spent short periods of time employed in various capacities, including as a fast food worker, trash collector, and mowing lawns. Most of his periods of employment have lasted no more than a few weeks. Leister has not maintained a job long enough or made enough money to achieve substantial gainful activity. He has consistently been homeless, living with his mother or close friends. Leister has a few friends. He spends most of his time alone or with few other people. He generally spends his days watching TV, playing video games, or sleeping. Leister does not cook, but is able to feed himself with pre-prepared food.

Leister was incarcerated for periods of time from 2005 until 2010.[1] While incarcerated, he saw doctors consistently for mental health treatment. In February 2005, Dr. Sutikant diagnosed Leister with bipolar II disorder, alcohol and polysubstance dependence, antisocial personality disorder, and GAF 40. [Tr. 497]. He was prescribed Loxapine and Trazodone. *Id.* In April 2005 his dosage of Loxapine was increased, Trazodone was discontinued, and Prozac was prescribed. [Tr. 500-02]. In October 2008 Leister saw Dr. Hogan because he was suffering from mood swings though medication compliant. [Tr. 515]. Dr. Hogan diagnosed bipolar I, polysubstance dependence, and GAF 55. *Id.* Leister experienced similar symptoms throughout the remainder of 2008

---

[1] The precise duration of Leister's incarceration and whether he was released for periods of time between 2005 and 2010 is unclear from the record. However, Leister's medical records from the Missouri Department of Corrections span from 2005 to 2010.

and much of 2009. In November 2009, Leister reported hearing whispers in his head. [Tr. 537]. One month later he had not received his medications and reported worsening depression, paranoia, mania, mood swings, and irritability. [Tr. 538]. In February 2010, Leister saw Dr. Imam and reported suffering from mood swings, paranoia, feeling suspicious, hearing and seeing things, and communicating through telekinesis. [Tr. 543]. Leister was diagnosed with bipolar disorder NOS with psychotic features, polysubstance dependence, antisocial personality disorder, and GAF 50. [Tr. 545]. Three weeks later, he reported that the voices were better. [Tr. 547].

In July 2010, following his release from prison, Leister saw Dr. Miciano and was diagnosed with schizophrenia and generalized anxiety diagnosis. [Tr. 559]. He was prescribed Valium. [Tr. 560]. His dosage was increased a month later. [Tr. 557]. In November 2010 he saw Dr. Miciano to report that he had been without medication for two days and was feeling shaky and jittery. [Tr. 588]. In January 2011 Dr. Miciano advised Leister to see a psychiatrist, but Leister was unable to afford to do so. [Tr. 586]. In July 2011 Leister returned because he had been out of his medication for five days and had been unable to find a psychiatrist. [Tr. 607]. Dr. Miciano noted that Leister had track marks on his right arm and Leister stated that he had been selling plasma for a few weeks. *Id.*

Around January 2012 Leister was again incarcerated and tested positive for Hepatitis C. [Tr. 743]. He was placed on suicide watch in April 2012 and requested a cell by himself. [Tr. 775]. In June, Leister reported that he had mild auditory hallucinations "all the time," which he described as whispers that he could not

4

understand. [Tr. 987]. He was diagnosed with bipolar disorder and polysubstance abuse. *Id.* In July 2012 he was free of depressive symptoms and his irritability and paranoia had improved significantly with medication. [Tr. 991]. His auditory hallucinations persisted. *Id.*

The record contains two medical opinions regarding Leister's psychological functioning. Dr. Rick Thomas, licensed psychologist, evaluated Leister in April 2007 and concluded that Leister's paranoid tendencies, ADD, and depression prevented him from maintaining gainful employment. [Tr. 798]. In November 2010, Dr. Keith Allen, licensed psychologist, completed a Psychiatric Review Technique without examining or treating Leister. [Tr. 561]. Dr. Allen concluded that Leister suffered mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. [Tr. 569]. Leister was also examined by Dr. Holly Chatain, licensed psychologist, at the request of the Cass County Family Support Division in order to "aid his medical review team with the determination of his eligibility for medical assistance." [Tr. 582]. Dr. Chatain recommended that Leister be referred to outpatient psychological treatment and continue medication monitoring by his prescribing physician. *Id.*

### B. ALJ Decision

Upon review of the record, the ALJ concluded that Leister suffered from severe impairments including bipolar affective disorder, major depression, anxiety, and polysubstance abuse. [Tr. 11]. He then concluded that Leister has the following Residual Functional Capacity (RFC):

> [T]o perform a fully range of work at all exertional levels but with the following nonexertional limitations: he can understand, remember, and carry out at least simple instructions and non-detailed tasks; maintain concentration and attention for two hour periods over an eight hour period; respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent; adapt to routine, simple work changes; and perform work [at] a normal pace without production quotas.

[Tr. 13].

In determining Leister's RFC, the ALJ considered but ultimately discounted Leister's testimony regarding his symptoms at the administrative hearing. The ALJ noted that Leister stated that he experiences auditory hallucinations, extreme paranoia, anxiety, and depression. [Tr. 14]. Leister also admitted that he occasionally uses marijuana and methamphetamine. *Id.* The ALJ discounted Leister's testimony regarding his disabilities because he concluded that Leister's school records showed "that he was able to earn good grades in school when he chose to do so, but was often truant and consistently refused to do the assigned work." *Id.* He also found that Leister's hospitalizations were for stealing and drug abuse, rather than depression or anxiety. *Id.* Leister had also been imprisoned for drug trafficking. *Id.* The ALJ concluded that "[t]his history is consistent with willful behavior, but in no way establishes that he could not function when he so chose." *Id.*

The ALJ further noted that recent prison records showed Leister effectively following a schedule, relating appropriately to peers and authority figures, and free of depression and anxiety while adhering to his medication regimen and abstaining from drugs and alcohol. *Id.* Leister also reported significant improvement in symptoms of paranoia after a week on prescribed medication before he was released from prison in

6

March 2010. *Id.* The ALJ noted that Dr. Chatain observed no significant psychiatric signs and that Dr. Miciano reported in January 2011 that Leister's anxiety was controlled on medication and he only occasionally experienced depression. [Tr. 15]. Finally, the ALJ stated that Leister "ha[d] not shown that he is unable to control his consumption of alcohol and drugs, and it is found that he is able to do so when he chooses." *Id.* Based on these findings, the ALJ concluded that Leister was not legally disabled even when choosing to abuse drugs and alcohol. *Id.*

In discussing his RFC determination, the ALJ did not remark on the opinions of Dr. Thomas or Dr. Allen. The decision also includes no mention of three third party statements from Leister's friend, aunt, and family friend, regarding his difficulties with day to day functioning and social interactions.

## II. Standard

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III.  Discussion

Leister argues that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, Leister contends that the ALJ erred in failing to consider and weigh all medical opinion evidence of the record and third party statements, incorrectly assessing Leister's history of substance abuse, and incorrectly evaluating Leister's ability to work.  The Court concludes that the ALJ's failure to weigh the medical opinion evidence and third party statements necessitates remand of the ALJ's decision.

Leister contends that the ALJ's failure to identify the weight assigned to Dr. Thomas and Dr. Allen's opinions constitutes reversible error.  Defendant argues that the decision is sufficient because an ALJ is not required to discuss every piece of evidence submitted and an ALJ's failure to cite specific evidence does not indicate that it was not considered.  *Citing Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).  She further argues that as the opinions are from a one-time consultative examining physician and non-examining physician, the opinions would generally not constitute substantial evidence.

While Defendant is correct that an ALJ need not discuss every piece of evidence in the record, the ALJ must conduct a sufficient review in order for the reviewing court to be able to conclude that the decision is supported by substantial evidence of the record. "'Our primary difficulty is not with the possibility that the ALJ discounted [the opinions],' as an ALJ is free to discount a physician's report if the record warrants this.  The problem with the ALJ's opinion is that it is unclear whether the ALJ *did* discount

[the opinions], and, if it did so, why." *McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008).

Though these opinions were rendered by one doctor who never evaluated Leister in person and one who evaluated Leister a single time, in some cases such opinions "may be entitled to greater weight than the opinions or treating or examining sources." SSR 96-6p. In this case, the opinions of Dr. Allen and Dr. Thomas[2] are the only medical opinions on the record specifically regarding Leister's ability to function in the workplace. While the ALJ may have discounted the opinions, he should have weighed the opinions in reaching his conclusion regarding Leister's RFC.

The ALJ's only evaluation of opinion evidence in the record was of Dr. Chatain's statement to the Cass County Family Support Division regarding Leister's eligibility for medical assistance. The ALJ concluded that Dr. Chatain observed no significant psychiatric signs. This conclusion is not supported by Dr. Chatain's statement, which noted that Leister suffered from Schizoaffective Disorder and was impaired in psychological functioning due to depression, hypomania, and psychosis; she further recommended that Leister be referred to outpatient psychological treatment. [Tr. 582].

---

[2] Defendant argues that as Dr. Thomas's opinion was rendered in 2007, it is outside of the relevant time period and need not be considered. However, the record contains no evidence that Leister's mental state or abilities have changed significantly since 2007. Furthermore, in light of Dr. Thomas's opinion that Leister could not maintain substantial gainful employment, the lack of substantial medical opinions in the record, and the consistency between Dr. Thomas's opinion and Dr. Chatain's opinion, if the ALJ felt that he could not rely on the opinion due to the date it was rendered, he may have been obligated to obtain additional evidence regarding the extent of Leister's disability. *See McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled.").

Dr. Chatain's opinion is consistent with Dr. Thomas's opinion, which went on to conclude that Leister's impairments would likely prevent him from maintaining substantial gainful activity. In light of the consistency between the statements, and Dr. Thomas's conclusion that Leister would not be able to maintain employment, the ALJ's decision should have weighed the merits of Dr. Thomas's opinion.

Leister next contends that the ALJ erred in failing to consider third party statements regarding his ability to function. Social Security Rulings are clear that third party testimony should be considered when evaluating a claimant's credibility and the extent of his symptoms. SSR 96-7p ("If an individual's statement about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements and other persons concerning the individual's symptoms."). If the ALJ concluded that Leister's medical records were insufficient to support his claims regarding the extent of his impairments, the ALJ should have evaluated the third party opinions of the record. The ALJ's decision gives no indication that any consideration at all was given to these opinions.

The third party opinions may be particularly relevant in this case in light of Leister's frequent periods of incarceration. Leister's medical records from his time in prison are relatively thorough and suggest that when Leister was under constant supervision and living in a highly regimented environment, his symptoms were well controlled. The record contains far fewer medical records from the periods of time when Leister was not incarcerated, and what records exist are much less detailed and suggest

that Leister had difficulty administering his own medications and maintaining his behavior on his own.[3] Leister's claims, which are consistent with the content of the third party statements, that he struggled to function outside of a structured environment and suffered from delusions and paranoia are consistent with mental illness, which may elicit varying degrees of symptoms in different environments.[4] Furthermore, Leister's symptoms rarely, if ever, completely abated even when he was incarcerated, taking his medications as prescribed, and not using drugs or drinking alcohol. Leister consistently complained of auditory hallucinations and mood swings. Given that few medical records exist from Leister's time outside prison, the third party opinions in this case help shed light on the extent of these symptoms and Leister's ability to function when not incarcerated.[5]

In light of the ALJ's failure to consider and weigh the relevant medical and third party opinions in the record, the ALJ's determination regarding Leister's RFC is not supported by substantial evidence.

---

[3] Leister's medical records from his time out of prison consist primarily of records from Leister's two visits to Dr. Miciano for prescription refills.

[4] Leister's records from middle school and high school lend credence to the idea that his environment plays an important role in his ability to function, as his grades and behavior consistently improved when he attended programs for individuals with behavioral or mental health problems, and consistently declined immediately upon his return to an unsupervised environment.

[5] As the credibility of these statements has yet to be determined and evidence in them has yet to be considered, Defendant's argument that the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the third parties' statements is unpersuasive.

11

## IV. Conclusion

The Commissioner's final decision is reversed and remanded. On remand, Leister's case should be assigned to a different ALJ. In addition to weighing the medical and third party opinions on remand, the ALJ should also reconsider whether the evidence of Leister's functional capacity while incarcerated is indicative of his ability to function in an unstructured environment. After reevaluating Leister's RFC in light of this evidence, the ALJ should reconsider the causes and effects of Leister's drug and alcohol use and whether Leister has the ability to sustain substantial gainful employment.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: December 15, 2014
Jefferson City, Missouri